FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 27, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM WOMACK,<br><br>Plaintiff,<br><br>v.<br><br>LANDON ADAMS and RICHARD ZARAGOZA, JOHN or JANE DOES 1–5, and JOHN or JANE DOES 6–10,<br><br>Defendants. | No. 4:15-CV-5095-SMJ<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

William Womack is an inmate in the custody of Washington Department of Corrections (DOC) at Walla Walla State Penitentiary (WSP). Womack brought this action under 42 U.S.C.§ 1983 suit against two WSP officials—Correctional Unit Supervisor Landon Adams and Mailroom Correctional Officer Richard Zaragoza—alleging violations of his constitutional rights under the Eighth and First Amendments. Defendants Adams and Zaragoza moved for summary judgment on these claims.

Defendants are entitled to summary judgment because Womack cannot make out a prima facie case on either claim. Womack alleges that he was assaulted by another prisoner due to Adams's deliberate indifference in violation of the Eighth

ORDER - 1

Amendment. Specifically, he contends that Adams should have reassigned Womack to WSP's Special Housing Unit because this conviction for sex offenses involving minors marked him as a target for violence and harassment at the hands of other prisoners. To establish an Eighth Amendment violation, Womack must show that Adams acted with deliberate indifference in the face of a serious risk of harm of which he was subjectively aware. *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Based on the undisputed facts in the record, Womack cannot show that Adams subjectively knew of a serious risk of harm. His Eighth Amendment claim therefore fails.

Womack's First Amendment claims are equally unsupported. Womack asserts that Zaragoza violated his First Amendment rights by rejecting mail containing books on two occasions pursuant to WSP and DOC policy. Prison policies infringing on prisoner rights are permitted so long as they are reasonable in light of the countervailing interests involved. *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). Womack objects to WSP's policy restricting prisoners from receiving used books from non-approved vendors and its policy prohibiting prisoners from receiving the "Great Book of Tattoo Designs." However, both policies directly further WSP's legitimate penological interests of prohibiting contraband and preserving inmate and guard safety. Womack therefore cannot show the policies are unreasonable.

Even if Womack could establish a prima facie case, both defendants are entitled to qualified immunity because neither violated a clearly established right.

Accordingly, Defendants' motion for summary judgment is granted in full.

## UNDISPUTED FACTS

Womack is an inmate housed at Washington State Penitentiary (WSP) in Walla Walla, Washington. ECF No. 60-1 at 3. He is currently serving time for crimes related to sexual abuse of a child and intimidating a witness. 60 at 2. Womack has been in custody at WSP since April 2012. *Id.* During his first year in custody, Womack was housed in the general population. *Id.* at 3. He was designated close-custody, the most secure custody level in the WSP general population. *Id.* In March 2013, Womack was transferred to the Special Housing Unit. *Id.* at 4.

**A. February 2013 assault by another inmate**

In January of 2013, Womack received a note from another inmate warning him that other inmates had discovered the nature of Womack's criminal convictions. ECF No. 81 at 73. Womack showed the note to Sergeant Roop. ECF No. 62 at 2. Correctional Unit Supervisor Adams and Sergeant Roop had a brief conversation with Womack to discuss his concerns. ECF No. 60 at 4. During that conversation, Womack requested that he be placed in protective custody. *Id.* He asserted that he feared for his safety, but did not provide any detail in response to Adams and Roop's questions about specific threats of violence against him. *Id.*

Womack told Adams and Roop that no other inmate had threatened him. *Id.* This was the first and only time Womack expressed concerns for his safety to prison officials. *Id.*

On February 21, 2013, another inmate, Ryan Ritter, punched Womack in the back of the head. ECF No. 60 at 3. A scuffle ensued and both inmates were quickly subdued and handcuffed by WSP corrections officers. Both Womack and Ritter were transferred to the Intensive Management Unit on temporary segregation placement pending a disciplinary hearing. ECF No. 60 at 3. On February 26, 2013, disciplinary hearings were held for both Womack and Ritter. *Id.* Womack's fighting infraction was dismissed and Ritter was found guilty. *Id.*

Following the disciplinary hearing, Womack's housing status was changed from the temporary pre-hearing segregation to administrative segregation for protection concerns following the assault by Ritter. *Id.* at 4. Prison officials scheduled a mental health assessment for Womack to determine appropriate housing moving forward. *Id.*

The Facility Risk Management Team held a hearing to determine the most appropriate housing for Womack following the assault. *Id.* Womack was accepted into WSP's Special Housing Unit on March 26, 2013. *Id.* The Special Housing Unit is primarily used to house inmates who prison officials determine would benefit

from protection from the general population or specific inmates who pose a threat. *Id.*

On January 8, 2016, Womack signed and submitted a request to remove the separation order between himself and inmate Ritter. ECF No. 63-1. In the request, Womack stated, "I have the absolute right to defend myself if anything is to happen." *Id.*

**B.     Rejection of unauthorized books by WSP mailroom**

In February 2014, WSP received two used books in the mail addressed to Womack from a San Francisco, California bookstore. ECF No. 59 at 2. A WSP mailroom staff member issued a mail rejection notice because the books came from a non-authorized vendor pursuant to DOC Policy 450.100. *Id.* at 2–3. DOC Policy 450.100, as effective in February 2014, allowed inmates to receive new books sent directly from the publisher. ECF no. 61-1 at 13–14. It also allowed inmates to receive used books from approved non-profit organizations. *Id.* In February 2014, WSP had not approved any non-profit organization to send used books to inmates. ECF No. 61 at 4.

The next day, Mailroom Correctional Officer Richard Zaragoza reviewed the rejection notice and confirmed the rejection. ECF No. 59 at 3. A copy of the mail rejection was provided to Womack. ECF No. 59-1. Womack appealed the mail rejection to the WSP Superintendent, and WSP Associate Superintendent Carla

ORDER - 5

Schettler affirmed the mail rejection. ECF No. 59-2. Womack received written notice of the affirmation. Womack appealed Schettler's decision to DOC Headquarters. ECF No. 61 at 4. Correctional Manager Isreal Gonzalez reviewed the appeal and upheld the rejection. ECF No. 61-2.

In April 2016, Womack received a book in the mail titled "Great Book of Tattoo Designs" by Lora Irish. ECF No. 61 at 5–6. A WSP mailroom staff member rejected this book and issued a mail rejection notice to Womack. *Id.* At the time the book was rejected, it was listed on a state-wide restriction list within DOC. *Id.* Zaragoza reviewed and approved the mailroom staff member's rejection notice. ECF No. 59 at 4. Womack appealed the rejection, and Gonzalez upheld the rejection as proper. ECF No. 61 at 6.

## LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has

carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

### A. Womack's Eighth Amendment[1] claim fails because Womack cannot show that Adams acted with deliberate indifference.

Womack asserts that Adams violated the Eighth Amendment by permitting Womack to be housed in WSP's general population from 2012 to February 2014. Although he has submitted evidence sufficient to raise a genuine issue of material fact regarding whether his housing assignment presented a substantial risk to his safety, Womack cannot show that Adams act with deliberate indifference.

---

[1] Defendants also assert that summary judgment is appropriate on Womack's related Fourteenth Amendment claim, however, because Womack has since filed a third amended complaint that does not contain the same Fourteenth Amendment claim, Defendants' argument is moot.

ORDER - 7

Accordingly, Womack's Eighth Amendment claim fails, and summary judgment is proper.

The Eighth Amendment requires prison officials to protect inmates from violence at the hands of other inmates. *Farmer*, 511 U.S. at 833. Violation of this mandate is a basis for liability under § 1983. *Id.* To establish a violation of this duty, an inmate must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmate's safety. *Id.* at 834. This deliberate indifference standard involves an objective and a subjective prong. First, objectively viewed, the prison official's act or omission must present a "substantial risk of serious harm." *Cortez*, 776 F.3d at 1050 (quoting *Farmer*, 511 U.S. at 834). Second, the official must be subjectively aware of that risk and act with "deliberate indifference to inmate health or safety." *Id.* (quoting *Farmer*, 511 U.S. at 834).

Viewed in the light most favorable to Womack, there is a genuine issue of material fact as to whether placing him in the general population unit posed a substantial risk of serious harm. A prisoner can, in some circumstances, establish exposure to a sufficiently serious risk of harm "by showing that he belongs to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates." *Farmer*, 511 U.S. at 843. Womack was convicted of crimes involving sexual abuse of a minor. ECF No. 60-1. He has produced evidence in the form of several prisoner-declarations that inmates at WSP convicted of sex crimes

involving children are singled out for harassment and physical harm. ECF Nos. 76–80. He has also produced evidence that he was identifiable as a member of this putative group. ECF No. 81 at 73 (inmate letter to Womack alerting him that inmates know of his charges). This is not to say that Womack has firmly—or even tentatively—established that his housing assignment with the general population constitutes a serious risk of harm. Adams has produced evidence that offenders convicted of similar crimes are routinely housed in the general population without incident. ECF No. 60 at 5. Even so, the Court cannot say that no reasonable juror could conclude Womack's housing posed a serious threat of harm. Womack has therefore raised a genuine issue of material fact on this issue.

Womack's Eighth Amendment claim nonetheless fails as a matter of law because Womack cannot show that Adams acted with deliberate indifference. A prison official acts with deliberate indifference only when he knows of and disregards an "excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Here, Womack cannot show that either condition was met. Before his 2014 encounter with Ritter, Womack lived in the general population for nearly one year without incident. He approached Adams only once with generalized concerns about his safety. Without more, this is insufficient to support Womack's allegation that

ORDER - 9

Adams knew of an impending attack and refused to intervene. *See, e.g.*, *Labatad v. Corrections Corp. of Am.*, 714 F.3d 1155, 1161 (9th Cir. 2013) (holding a prisoner's reporting a generalized fear without describing specific threats was insufficient to establish deliberate indifference); *Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) (concluding prison supervisors lacked knowledge of risk to inmate because inmate failed to provide details about attacker's actions).

Womack contends that, when he was processed for admission to the prison, Roop told him not to reveal the nature of his charges to other inmates. ECF No. 81 at 3. He asserts that this comment demonstrates that Roop was actually aware of a risk to Womack's safety. *Id.* Roop denies making this statement. ECF No. 58 at 5. Even if taken as true, Roop's generalized word of caution does not support the conclusion that Adams knew of and intentionally disregarded a specific actual threat to Womack's safety.

The undisputed evidence in the record show shows that Adams was not deliberately indifferent to a substantial risk of an attack on Womack if he were housed in the general population. Accordingly, Adams is entitled to summary judgment on Womack's Eighth Amendment claim.

**B. WSP's restrictions on Womack's incoming mail did not violate the First Amendment because the restrictions directly further the valid penological objectives of security and safety.**

Womack asserts that WSP, through mailroom correctional officer Richard Zaragoza, violated his First Amendment rights by rejecting books he attempted to order through the mail. Womack bases his claim on two instances: (1) in 2014, WSP rejected two second-hand books Womack ordered from a California bookstore named Bound Together Anarchist Collective Bookstore. WSP rejected the books based its policy prohibiting used books from unauthorized vendors; and (2) in 2016, WSP rejected a book titled "Great Book of Tattoo Designs." Although Womack ordered the book new from the publisher, WSP rejected the book because the title is on a state-wide restriction list within the DOC because it contains instructions on how to administer tattoos. Although Womack asserts that both instances violated his First Amendment rights, his claim fails because both policies are based on legitimate penological interests and do not unnecessarily burden prisoner rights. Accordingly, Zaragoza is entitled to summary judgment on this claim.

Incoming mail restrictions are appropriate if considered reasonable after conducting a *Turner* analysis. *Thornburgh*, 490 U.S. at 413–14; *Turner*, 482 U.S. 78. In *Turner*, the Supreme Court articulated the factors courts should consider when evaluating the reasonableness of a prison regulation. First and foremost, "there must be a 'valid and rational connection' between the prison regulation and

the legitimate [and neutral] governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (quoting *Block v. Rutherford*, 468 U.S. 576. 586 (1984)). In addition, courts should consider three other factors: (1) whether there are alternative means of exercising the right available to inmates; (2) the impact on guards, other inmates, and on the allocation of prison resources if the asserted constitutional right is accommodated; and (3) the existence of alternative solutions that would preserve the inmate's constitutional rights. *Turner*, 482 U.S. 78 (1987). The inmate bears the burden to show the challenged regulation is unreasonable under *Turner*. *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993).

An application of the *Turner* factors reveals WSP's policy prohibiting prisoners from receiving used books from non-approved vendors, DOC Policy 450.100, is reasonable. First, the policy is plainly intended to further the legitimate penological interest of preventing contraband from entering the prison. Defendants assert that drugs may be hidden in the pages or weapons may be asserted into worn bindings. ECF No. 58 at 8. Limiting incoming books to those shipped directly from the publisher substantially reduces the risk the books could have been tampered with or altered. Second, WSP's policy provides inmates an alternative means of exercising the disputed right by permitting books new from the publisher. ECF No. 61-1 (DOC Policy 450.100). Third, accommodating the right would result in a threat to the safety of guards and other inmates as there is no ready alternative for prison

ORDER **-** 12

officials. Prison officials must sort through all incoming mail to prevent contraband from entering the facility. WSP's policy on used books provides a streamlined, easily applicable tool to determine which books pose a threat. *See* ECF No. 59 at 3. Without this tool, prison staff would be forced to engage in a much more costly and time consuming search process and the increased potential for drugs and weapons entering the prison would pose a threat to guards and inmates alike.

Similar considerations support Zaragoza's rejection of the "Great Book of Tattoo Designs." Zaragoza approved the book's rejection because the title was on a state-wide restriction list within the DOC. ECF No. 59 at 3. The book is prohibited because it provides information about tattoos in a "how to" manner. ECF No. 58 at 9. WSP's prohibition of this publication is therefore related to the legitimate penological interest of minimizing the threat prison-tattooing poses to inmate health and safety. As above, the remaining three factors also support the reasonableness of this restriction. Not all books about tattoos are banned, and prisoners may view tattoos as an art form by reading publications available in the prison library. ECF No. 58. If the prison were to permit inmates unfettered access to publications instructing the reader on the mechanics of tattooing, it is possible that prison-tattooing could increase. Because prison tattooing can cause serious infections, spread blood-borne disease, and promote affiliation with various criminal associations, accommodating this right could threaten the health and safety of

guards and inmates. Finally, like the policy on used books, placing certain publications on a restricted book list serves as a useful screening tool to which there is no readily available alternative. Without a restricted publication list, mail room staff would be forced to inspect and evaluate each publication entering the prison. This is likely unworkable and could yield inconsistent results.

Womack asserts that the fact that a second book titled "100 Biker Tattoos" is not placed on the restricted list shows that the ban on "Great American Tattoo Design" is arbitrary and unconstitutional. Even if the Court were inclined to second-guess the prison administrators' judgment, which it is not,[2] this fact alone is insufficient to illustrate that the decision regarding the book in question is arbitrary. Accordingly, the outcome under the *Turner* analysis is unchanged by the fact that a different publication touching on the same general subject matter is permitted.

**C. Even if Womack had alleged a constitutional violation, summary judgment is still appropriate because Defendants are entitled to qualified immunity.**

The Court does not need to reach the issue of qualified immunity because Defendants did not commit any constitutional violation. However, if there were a

---

[2] *See Bell v. Wolfish*, 441 U.S. 520, 562 (1979) ("The court might disagree with the choice of means to effectuate those interests, but it should not 'second-guess the expert administrators on matters on which they are better informed . . . . Concern with the minutiae of prison administration can only distract the court from detached consideration of the one overriding question presented to it: does the practice or condition violate the Constitution?'" (quoting *Wolfish v. Levi*, 573 F.2d 118, 124–25 (2d Cir. 1978)).

ORDER - 14

constitutional violation, Defendants would be entitled to qualified immunity because Womack has not shown that Defendants violated any clearly established right. Qualified immunity is therefore an appropriate alternative basis for granting summary judgment.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether an officer is entitled to qualified immunity, courts employ a two-step test: first, the court decides whether the officer violated a plaintiff's constitutional right; then the court determines whether the constitutional right was clearly established in light of the specific context of the case. *Matteo v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011). The court may address the two prongs of the analysis in either order. *Id.*

With respect to Womack's Eighth Amendment claim, the relevant inquiry is whether, at the time Womack approached Adams with his safety concerns, Adams violated a clearly established constitutional right by not immediately and preemptively removing Womack from the general prison population. There are no cases suggesting that prison officials must take such action in light of an inmate's vague and generalized safety concerns. In fact, cases tend to suggest that such action is necessary only when officers are aware of specific facts suggesting imminent

harm. *See, e.g.*, *Sean v. Hernandez*, 50 F. App'x 4, 5 (9th Cir. 2003) (holding that a district court properly denied qualified immunity to prison officials who knew that an inmate faced a substantial risk of harm because the inmate told them who, why, where, and when a group of inmates threatened to attack him). A reasonable prison official under the circumstances therefore likely would not think it was necessary to preemptively remove Womack from the general population. Adams is therefore entitled to qualified immunity on Womack's Eighth Amendment Claim.

Zaragoza is likewise shielded by qualified immunity from liability on Womack's First Amendment claim. The existence of the *Turner* test makes clear that prisons can restrict inmate rights if the policy is related to a legitimate penological purpose. The policy restricting used books and the policy banning the "Great Book of Tattoo Designs" both further the goals of preserving guard and inmate safety. Accordingly, even if the policies did infringe on Womack's First Amendment right, it is not clear that any reasonable officer in Zaragoza's shoes would have concluded the policies were unconstitutional. This is particularly true in light of the fact that numerous courts have upheld similar policies. *See Minton v. Childers*, 113 F. Supp. 3d 796, 803 (D. Md. 2015) (upholding prison's directive banning incoming used books not sent directly by the publisher after conducting a Turner analysis); *Phipps v. Vail*, No. C11-5093-BHS-JRC, 2012 WL 472894, at *6 (W.D. Wash. Jan. 9, 2012) (upholding restrictions on inmate's receipt of used books

under Turner); *Kinney v. Curtin*, No. 2:08-CV-58, 2009 WL 3052215, at *2 (W.D. Mich. Sept. 21, 2009) (adopting magistrate judge's report and recommendation which upheld the prison's restrictions on used books under *Turner*).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

**1.** Defendant's Motion for Summary Judgment, **ECF No. 57**, is **GRANTED**.

**2.** To the extent Plaintiff's request to the Court to "allow more discovery," ECF No. 100 at 4, operates as a motion to extend the discovery deadline, this motion is **DENIED** as moot.

**3.** Plaintiff's Motion to Compel Defendants to Answer Plaintiff's Second Set of Interrogatories and Production, **ECF No. 92**, is **DENIED** as moot.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel and *pro se* Plaintiff.

**DATED** this 27th day of December 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge